## Crum v. Commonwealth.

(Decided March 7, 1924.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Decision on Former Appeal Law of Case.—Determination on former appeal that it was the duty of the trial court in a homicide case to give certain instructions was the law of the case on a subsequent appeal.

2. Homicide—Remoteness of Threats Goes Only to Weight.—The general rule is to admit evidence of threats by defendant against deceased regardless of remoteness, as the element of time goes to the weight and not the competency of the evidence.

3. Homicide—Evidence of Threat Held Properly Admitted.—A statement of accused some months before the homicide that he had been mighty good to the deceased and had done many good things for him, but he could do as many mean things as he had ever done good things, was properly admitted as a threat as against objection that it was too remote.

4. Criminal Law—Court Erred in Not Permitting Physician to Give Opinion as to Effect of Blow Seen by Him Without Hypothetical Question.—In a homicide case court erred in not permitting qualified physician to testify as to the effect a blow delivered by deceased upon defendant was calculated to have, even though the matter was not presented by a hyphothetical question, the witness knowing all the facts as an eye-witness and having stated them in his testimony.

5. Homicide—Instruction as to Doubt of Degree of Crime Held Not Prejudicial.—If an instruction relating to the duty of the jury to give the defendant the benefit of the doubt, if any, as to whether the crime proven was that of murder or manslaughter, was erroneous, it could not have prejudiced defendant where he was convicted of manslaughter.

A. J. MAY and EDWARD L. ALLEN for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

On a former appeal of this case in which the judgment was reversed the court said: "It was the plain duty of the trial court to have given an instruction upon the law of accidental and non-intentional killing and involuntary manslaughter, as well as one on the reckless use of firearms." That is the law of the case. That opinion sets out the facts in detail. It is reported in 196 Kentucky 802.

Several grounds are assigned for a reversal of this judgment. One is the admission of the incompetent evidence. This relates chiefly to the testimony of Maryland Wallen. By this witness it was proven that some months before the homicide appellant had stated to the witness when speaking of the deceased, "He (appellant) said he had been mighty good to the kid and had done many good things for him but he could do as many mean things as he had ever done good things." This was offered by the Commonwealth as a threat by appellant against deceased. It was supported by some other evidence to the effect that appellant and appellee had at different times quarreled. Appellant's chief objection to the testimony is its remoteness in point of time. Such evidence is sometimes rejected because too remote but the general rule is to admit threats made by the appellant against the deceased regardless of its remoteness as the element of time goes to the weight but not the competency of evidence. Roberson's Kentucky Criminal Law, page 305. We do not think, therefore, that the court erred in the admission of the evidence above copied.

Appellant also insists that the court erred in rejecting the testimony of Dr. Stumbo with respect to the effect the blow struck appellant by the deceased Hall immediately before the killing, had upon appellant. Dr. Stumbo saw the killing. He testifies that just before the shot was fired which took the life of Hall, the latter struck appellant with a large stone on the side or back of the head, inflicting an ugly wound; that the wound was at a place on the head where a blow was calculated to have a serious effect upon the recipient. He was then asked to give his opinion, as a physician, as to the effect such a blow would have upon a man like appellant. The Commonwealth objected and the court allowed the jury

to retire. The doctor was then asked: "Q. From your knowledge and experience as a surgeon and physician, what in your judgment would have been the result or was the result of the blow which Crum received from the deceased on the occasion when you say you saw him strike him with a rock, as to whether it would produce a state of unconsciousness or temporary insanity?" Out of the presence of the jury he was allowed to answer. "A. I believe it would. Q. Is that belief based upon the condition connected with the wounds you saw on Crum's head, or the nature of the rock you saw him hit with? A. Yes sir. Q. I believe you stated what the rock would have weighed? A. Yes sir, three or four pounds."

The court overruled the motion of appellant to allow this evidence to be heard by the jury. Inasmuch as the witness was a trained physician entirely qualified, according to the evidence, to give expert evidence upon the subject under consideration, the court should have allowed him to answer the question as to the effect the blow was calculated to have upon appellant even though it was not presented by a hypothetical question. The witness knew all the facts for he had stated them in his testimony and showed his qualifications to answer the question propounded. The court, therefore, erred in rejecting this evidence on behalf of appellant.

Appellant insists that instruction number three relating to the duty of the jury to give the defendant the benefit of the doubt, if it entertained a doubt, as to whether the crime proven was that of murder or the lesser offense of manslaughter, to give him the benefit of the lower offense and punishment, in case it found him guilty, was error. We do not think appellant could have been prejudiced by this instruction for its only purpose was to give the defendant the benefit of the lower punishment, that prescribed for manslaughter instead of murder, and as the jury found him guilty of the lower offense he obtained all the results which he could have claimed under such an instruction.

It is next insisted by appellant that other instructions given by the court are erroneous. Instructions Nos. 1, 2, 3, 4, 6, and 7 were in the usual form and presented the law of the case so far as they went. Instruction No. 5 based upon section 1151, Kentucky Statutes,

should not have been given because that statute does not apply to such facts as we have in this case.

For the reasons indicated the judgment is reversed for a new trial consistent with this opinion.

Judgment reversed.